UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:07-CR-120 |
| v. ) | (PHILLIPS/GUYTON) |
| ) | |
| GERARDO MORA LOPEZ, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This action came before the Court on May 28, 2008, for an evidentiary hearing on defendant Gerardo Mora Lopez's Motion to Suppress Evidence On The Ground Of Lack Of Probable Cause To Issue Search Warrant [Doc. 72], and his Motion to Suppress Fruits of Wiretaps. [Doc. 73]. Assistant United States Attorney Tracee Plowell was present representing the government. Attorney Charles Webber was present representing Defendant, who was also present.

The two central issues before the Court are: (1) whether the District Court ordered "unnecessary" wiretaps of Defendant; and (2) whether the U.S. Magistrate Judge had probable cause to issue a search warrant for the search of a motel room. No testimony was presented, but the Affidavit in support of Application for wiretaps and the Order of the District Judge authorizing interception of wire communications were received as Exhibit 1 to the hearing. The parties argued at the conclusion of the hearing, and the Court took the matters under advisement. The matters are now ripe for adjudication.

## I.     FINDINGS OF FACT

On August 27, 2007, James Blanton, ("Blanton") an agent of the Drug Enforcement Administration, presented a 42 page Affidavit In Support of Application ("Blanton Affidavit") for an order authorizing interception of wire communications to U.S. District Judge Thomas A. Varlan. At the same time, Assistant United States Attorney David Jennings presented to Judge Varlan an Application For Order Authorizing Interception Of Wire Communications, based on the Blanton Affidavit. Based thereon, Judge Varlan issued, on August 27, 2007, an Order Authorizing The Interception Of Wire Communications for telephone number (865)566-5315.

The Blanton Affidavit in support of the application, and the application, fully inform the Court of the nature and scope of the investigation of a heroin cartel. The Blanton Affidavit sets forth that confidential informants have been utilized, but that the informants have been unable to break into the hierarchy or structure of the organization. Pen register analysis of the target telephones revealed that the organization was communicating with people in various states and in Mexico. Making small controlled purchases of heroin using an informant did not assist in identifying other members of the conspiracy or the drug organization. The Blanton Affidavit establishes that surveillance of this organization has been difficult, because the targets use multiple vehicles and reside in motel rooms.

The Blanton Affidavit further advises the Court, in the Need for Interception section (paragraph 60) and the Alternative Investigative Techniques section (paragraph 62), of specific efforts law enforcement has undertaken in this investigation.

Finally, the Court finds that the Blanton Affidavit sets forth specific and particular information demonstrating that other investigative techniques had been employed but had failed, and why other investigative techniques were either unlikely to succeed or too dangerous to employ.

On September 24, 2007, Matthew Estridge, an agent of the Drug Enforcement Administration, presented an Application And Affidavit For Search Warrant to U.S. Magistrate Judge Clifford Shirley (a copy of the Application and Affidavit are filed with Court file Doc. 110, and are stipulated). Based thereon, Magistrate Judge Shirley issued a search warrant in United States District Court for the Eastern District of Tennessee, for Room 121 of the Super 8 Motel located at 11746 Snyder Road in Knoxville, Tennessee. The said Application and Affidavit were based on information obtained through court-authorized interceptions of wire communications on telephone number (865) 566-5315. The telephone was used by co-defendant, Angel Contreras ("Contreras") also known as "Eddie." As set forth in agent Estridge's Affidavit ("Estridge Affidavit"), law enforcement personnel intercepted calls between Contreras and various other members of the alleged drug trafficking conspiracy. During the calls, a person would contact Contreras who would direct the person to a specific location, usually a parking lot of a shopping center or restaurant. The person was then met by either the defendant Lopez, or co-defendant Ernesto Alvarez Rodriguez ("Rodriguez"). Lopez and Rodriguez were driven to the delivery location by alleged co-conspirators.

The Estridge Affidavit further sets forth that once at the location, Lopez or Rodriguez would serve the customer, removing small balloons containing heroin from his mouth and handing it to the customer. The Estridge Affidavit establishes that law enforcement conducted surveillance and determined that Lopez was residing in Room 121 at the Super 8 Motel on Snyder Road. The room was rented in the name of Spencer White, an alleged co-conspirator, and the identification used to secure the room was in the name of the defendant Lopez. The vehicle used by Lopez was seen parked at the Super 8 Motel as of the morning of September 24, 2007. The Estridge Affidavit states that the said motel room was the residence and/or stash house used by Gerardo Mora Lopez, also known as "Carlos."

## II. MOTION TO SUPPRESS FRUITS OF WIRETAPS

Defendant contends that the government failed to meet the necessity requirement established by 18 U.S.C. § 2518. Specifically, Defendant argues that the government has not shown that "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Defendant contends that the Blanton Affidavit did not contain enough specific information, that conventional investigation methods, such as controlled buys and undercover work, either were working, or had got yet been tried, and that an extension affidavit for a replacement wiretap failed to set out new facts. The government opposes the motion, arguing that the wiretaps were proper and that the District Judge was advised of all relevant information. The government also argues that there was only one 30-day wiretap in this case, and that there were no extension or replacement wiretaps.

Federal law establishes the following procedure with respect to an application for a wiretap:

(1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge

on each such application; and

(f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

18 U.S.C. 2518(1).

In interpreting the requirements of 18 U.S.C. 2518(1)(c), the Sixth Circuit has held that the statute does not "require that the police officials exhaust every conceivable non-wiretap investigative technique. All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." United States v. Lambert, 771 F.2d 83, 91 (6th Cir. 1985).

In the present case, the Blanton Affidavit in support of the wiretaps at issue provides an extensive description of what techniques have been tried, as well as a description of why other, untried techniques would not be successful. These descriptions are specifically tailored to the case at hand, and the Court does not find them to consist of the boilerplate language warned against by other courts. See United States v. Leavis, 853 F.2d 215, 221 (4th Cir. 1988) ("mere 'boilerplate recitation of the difficulties of gathering useable evidence'" are insufficient to satisfy the necessity requirement; specific factual information is needed). In addition, the Court finds that the extensive nature of the drug network under investigation and the inability of the confidential informants available to the government to identify the full extent of the network, provide evidence of the government's need to resort to wiretaps in this matter.

Having reviewed the Blanton Affidavit and the wiretap application, the Court finds that the government did provide "a full and complete statement as to whether or not other

6

investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," as required by federal law. Therefore, the government did meet the necessity requirement of 18 U.S.C. 2518(1)(c).

Accordingly, the Court finds that the government satisfied the necessity requirement of 18 U.S.C. 2518(1)(c), and thus finds that the evidence obtained through the wiretaps should not be suppressed. There is no need or justification for an evidentiary hearing on this issue.

### III. MOTION TO SUPPRESS (SEARCH WARRANT)

Defendant contends that the Estridge Affidavit was insufficient on its face for the magistrate judge to have found probable cause for a warrant to search the subject hotel room. The defendant argues that no facts therein connect the motel room to the drug sales, which did not occur at the motel, or to the subject vehicle used by Lopez.

The government argues that law enforcement lawfully can seek to search the place of residence of a drug trafficker, and the surveillance established that the motel room was the residence of the Defendant. Moreover, the government asserts that the good faith exception would apply to overcome any underlying problem with the search warrant.

Courts generally accord a "presumption of validity to affidavits underlying search warrant applications." Franks v. United States, 438 U.S. 154, 171 (1978). The Court of Appeals for the Sixth Circuit has noted that "in reviewing a state magistrate's determination of probable cause, the court pays great deference to [the] magistrate's findings which should not be set aside unless arbitrarily exercised." United States v. Leake, 998 F.2d 1359, 1363 (6th Cir. 1993). As such, an issuing magistrate's determination of probable cause for a search warrant "should be upheld so

long as the magistrate had a 'substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing.'" United States v. Pelham, 801 F.2d 875, 877-78 (6th Cir. 1986) (quoting Jones v. United States, 362 U.S. 257, 271 (1960).

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than reasonable suspicion." United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999). It requires only a "probability of substantial chance of criminal activity, not an actual showing of such activity." Id. (quoting Gates, 462 U.S. at 244 n. 13).

In the present case, the search warrant affidavit provides that Estridge derived his information from court-authorized interceptions of wire communications, as well as personal observations, information from other law enforcement personnel, and his training and experience. A determination of probable cause simply requires consideration of whether there were reasonable grounds to believe at the time of the affidavit that the law was being violated on the premises to be searched. United States v. Eisner, 297 F.2d 595, 596 (6th Cir.), cert. denied, 369 U.S. 859 (1962); see also United States v. Loggins, 777 F.2d 336, 338 (6th Cir. 1985) (probable cause exists when there is a fair probability, given the totality of the circumstances that contraband or evidence of a crime will be found in a particular place). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought." United States v. Washington, 380 F.3d 236 (6th Cir. 2004) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

Defendant's argument that there was no nexus between the location searched, the motel room, and the evidence sought is not well-taken. The Estridge Affidavit supports the finding that the Defendant resided in, or at least occupied, the premises described in the search warrant.

8

There also is evidence in the record to establish that the Defendant was engaged in criminal activity, specifically, delivering heroin to people throughout the Knoxville area.

In United States v. Jones, 159 F.3d 969, 975 (6th Cir. 1998), the Court states, "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." The totality of the circumstances set forth in the Estridge Affidavit lead to the probability that the Defendant stored narcotics, materials used to package narcotics and proceeds of narcotics sales at the motel room. Law enforcement surveillance established that the Defendant was residing at the Super 8 Motel, and records revealed that the Defendant's alleged co-conspirator secured the lodging for Defendant. Furthermore, the Estridge Affidavit set forth that based upon the officer's training and experience, drug traffickers store drugs such as heroin and paraphernalia for packaging, cutting, diluting, weighing, and distributing heroin in their residences. The Estridge Affidavit also establishes that drug traffickers keep and maintain firearms, proceeds of their drug trafficking, and records of their drug-related activities and asserts purchased with drug proceeds at their residences.

Accordingly, the Court finds that the issuing Magistrate Judge correctly concluded that there was a sufficient nexus between the drug trafficking conspiracy, the Defendant, and the motel room, and properly found probable cause to issue the search warrant. See United States v. Blair, 214 F.3d 690, 696 (6th Cir. 2000) (holding that conclusions of experienced law enforcement officer regarding where evidence of crime will likely be found is a substantial fact upon which the issuing magistrate may rely when authorizing a search warrant); see also, United States v. Abboud, 438 F.3d 554, 572 (6th Cir. 2006) ("the magistrate correctly relied on the affiant's experience in his assessment of the probable location of the evidence").

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court explained that the exclusionary rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved." 468 U.S. at 906. For the good faith exception to apply, an officer must have had a "reasonable, objective and good faith belief that the search warrant was valid." Id. at 905. The Court also encouraged lower courts to employ the totality of the circumstances approach, using an objective measure, when assessing "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 923, n. 23.

Using the totality of the circumstances approach in the present case, the officer relied on the search warrant in good faith and properly entered the motel room. Therefore, even if there were some fault with the search warrant, which there is not, the Leon good faith exception would apply to sustain the legality of the search.

## IV.    CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant Gerardo Mora Lopez's Motion to Suppress Evidence On The Ground Of Lack Of Probable Cause To Issue Search Warrant [Doc. 72], and his Motion to Suppress Fruits of Wiretaps. [Doc. 73] should be **DENIED**.[1]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed with the clerk of the court within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).